# IN THE SUPREME COURT OF IOWA

No. 12–1928

Filed January 24, 2014

**IN RE THE MARRIAGE OF MELISSA JO MIHM
AND SCOTT ANTHONY MIHM,**

Upon the Petition of
**MELISSA JO MIHM** n/k/a MELISSA JO WEBER,

      Appellant,

And Concerning
**SCOTT ANTHONY MIHM,**

      Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Winneshiek County, David F. Staudt, Judge.

Ex-wife seeks further review of a court of appeals decision affirming a trial court judgment finding there was no substantial change in circumstances justifying modification of a child support order. **DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**

Judith M. O'Donohoe of Elwood, O'Donohoe, Braun, White, LLP, Charles City, for appellant.

Dale L. Putnam of Putnam Law Office, Decorah, for appellee.

**ZAGER, Justice**.

After Scott Mihm filed a petition to modify their divorce decree, his former wife Melissa counterclaimed seeking an increase in child support. As part of the original stipulation, the parties agreed to a child support amount below that provided by the child support guidelines. The district court incorporated this stipulation into its decree of dissolution without noting that the child support was not consistent with the child support guidelines and without any explanation as to why application of the guidelines would be unjust or inappropriate. After a modification trial, the district court concluded that there had been no substantial change in circumstances justifying a modification of Scott's child support obligation. The district court further concluded that an agreement as to child support made by the parties with full knowledge that the child support was not based upon the child support guidelines should not be modified at a later date "unless for the direst of needs." The court of appeals affirmed, and we granted further review. For the reasons set forth below, we reverse and remand on the issue of modification of child support.

**I. Background Facts and Proceedings.**

Scott and Melissa Mihm were married in November 1997. They have three children. In September 2008, Melissa filed a petition for dissolution of the marriage.

In October 2008, the district court entered a temporary order on custody and visitation, child and spousal support, and other financial matters. As part of the temporary order, Melissa was awarded a bank account with a balance of about $45,000, and Scott was ordered to pay spousal support of $2500 per month. Based on its finding of the parties' respective incomes, which included $1557.25 of net monthly income

imputed to Melissa, the district court ordered Scott to pay $2459.15 in temporary monthly child support. According to the order, the district court reached the amount using the child support guidelines then in effect.

In January 2009, Scott and Melissa entered into a stipulation and agreement for dissolution of the marriage. The stipulation divided the former couple's property and resolved, among other things, issues of spousal support, child custody, and child support. As part of the property settlement, Scott agreed to pay Melissa $500,000, with $100,000 due one week after entry of the decree and $400,000 paid over eight annual installments. Scott also agreed to pay Melissa $500 per month in spousal support for sixty months. The stipulation also provided Scott would pay $1500 per month in child support, an amount below the temporary child support earlier established by the child support guidelines. Under the stipulation, the parties agreed to joint legal custody of the three minor children, with primary physical placement remaining with Melissa. Melissa also agreed not to move more than sixty miles from Fort Atkinson, Iowa, without prior application to the court and court approval. On January 27, the court entered the decree, which incorporated the parties' stipulation. The district court did not note that the child support was lower than that established by the child support guidelines or make a written finding that it was deviating from the guidelines as the amount set by the child support guidelines would be unjust or inappropriate.

In June 2009, Scott petitioned to modify the decree, arguing there had been a substantial change in circumstances because Melissa moved more than sixty miles from Fort Atkinson. After initially filing an answer, Melissa amended her answer and added a counterclaim. Her

counterclaim sought to have the child support recalculated because there had been a substantial change in circumstances. Scott later amended his petition to include a claim seeking termination of spousal support based on Melissa's remarriage, which occurred in April 2011.

Before the modification trial, Scott and Melissa reached a partial stipulation. They agreed Melissa would retain physical custody of the two younger children, and Scott would assume physical custody of the oldest child, who had already returned to live with Scott. The two remaining issues, the termination of spousal support and the recalculation of child support, proceeded to trial in September 2012.

After the trial, the district court issued its order. First, the district court confirmed that Melissa had remarried. The district court also found that Melissa had shown no extraordinary circumstances justifying a continuation of spousal support. Accordingly, the court ordered that the spousal support of $500 per month terminate effective November 1, 2011.[1] It also ordered that Scott be credited with eleven spousal support payments made since that date.

The district court next addressed whether to recalculate Scott's child support obligation based on a substantial change in circumstances. The district court noted that two children remained in Melissa's physical custody as a result of the partial stipulation. The district court found Melissa accepted a $500,000 property settlement at the time of the decree. The district court also found the parties agreed in the stipulation to an amount of child support that was not based on the child support guidelines. Scott and Melissa had agreed that Scott would pay $1500

---

[1]Melissa testified she and Scott agreed orally that the spousal support would terminate effective November 1, 2011.

per month in child support, even though both parties were aware that the court's temporary order, which relied on the child support guidelines, established Scott's child support obligation as $2459.15 per month. The district court also noted that Melissa offered evidence of Scott's current income and evidence showing that if Scott's child support obligation were recalculated under the latest guidelines his support obligation would be substantially higher.

The district court also cited specific parts of Melissa's testimony at the trial. Melissa testified that she signed the stipulation in January 2009 against the advice of two attorneys. She signed it, however, because she felt harassed by Scott and wanted the dissolution proceedings to end, so long as she could have her children. Melissa conceded that she wanted to modify the child support obligation because she made a "bad deal" in the stipulation.

The district court concluded Melissa failed to show a substantial change in circumstances. First, the district court dismissed the notion that a party who agreed to an amount of child support, with knowledge that the amount was less than that provided by the child support guidelines, should later be permitted to modify the agreed-upon amount, except under rare circumstances. The district court next reasoned that a dissolution decree's child support determination is final as to circumstances that were known or should have been known through reasonable diligence at the time of the decree. The district court concluded that nothing showed that Scott's job or income had changed in a way that could not have been known at the time of the original decree.

In addition, the district court did not find wrong or injustice in continuing to enforce the stipulated amount of child support. Melissa

received a large property settlement in the decree, she had remarried since then, and her new husband was employed. Finally, the district court found no evidence was offered to show that the children would be adversely affected if the child support were not modified. Accordingly, the court denied Melissa's request to modify the child support.

Melissa appealed, and we transferred the case to the court of appeals. The court of appeals affirmed. Rejecting all of Melissa's arguments, and for the same reasons articulated by the district court, it held she had not shown a substantial change in circumstances to justify modifying the amount of child support under the decree. Melissa sought further review, which we granted.

## II. Standard of Review.

We review de novo a decision to modify a dissolution decree. *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013). Although the district court's fact findings are not binding upon us, we do give them weight. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We will not disturb a district court's ruling on a modification unless that ruling failed to do equity. *Id.*

## III. Discussion.

The issue on further review is whether there has been a substantial change in circumstances justifying a modification of the child support amount under the original divorce decree. Under Iowa Code section 598.21C, a court may modify a child support order "when there is a substantial change in circumstances." Iowa Code § 598.21C(1) (2011). The statute contains numerous factors a court may consider when deciding whether to modify the order, such as changes in a party's employment or income, changes in a party's number of dependents,

changes in a party's residence, a party's remarriage, and other factors relevant in the case. *See id.*

We have identified principles courts should also consider when deciding whether to modify a decree. *See, e.g., Michael*, 839 N.W.2d at 636 (explaining principles to consider in deciding whether there has been a substantial change in circumstances justifying a change in a spousal support obligation); *In re Marriage of Rietz*, 585 N.W.2d 226, 229 (Iowa 1998) (noting principles to consider when deciding to modify child support under a divorce decree). The change in circumstances must not have been within the district court's contemplation when the decree was entered. *Michael*, 839 N.W.2d at 636; *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983) (explaining one principle that emerges from modification caselaw is that the change in circumstances must not have been within the trial court's contemplation "when the original decree was entered"). Also, " 'it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice.' " *In re Marriage of Walters*, 575 N.W.2d 739, 741 (Iowa 1998) (quoting *Vetternack*, 334 N.W.2d at 762). Finally, the party seeking modification must prove by a preponderance of the evidence the substantial change in circumstances. *Rietz*, 585 N.W.2d at 229.

Melissa contends the transfer of the former couple's oldest child from her physical custody to Scott's was a substantial change in circumstances. As the court of appeals acknowledged, a change in the physical custody of a child is often a substantial change that justifies refiguring child support. *See In re Marriage of Titterington*, 488 N.W.2d 176, 180 (Iowa Ct. App. 1992); *In re Marriage of Green*, 417 N.W.2d 252, 254 (Iowa Ct. App. 1987). The court of appeals declined to increase

Scott's child support obligation on this basis, however, because taking physical custody of one child would typically be accompanied by a decreased child support obligation, not an increased obligation. That might be true in a typical case, but in this case, the amount Scott paid for three children under the original decree, $1500 per month, is substantially below the amount Scott would pay even for two children if his obligation were recalculated under the child support guidelines. In short, the reason for the increase, in spite of Scott taking physical custody of one child, is that Scott was paying such a small amount of child support to begin with.

Even if the change in custody of one child were not on its own a substantial change in circumstances, other facts support finding a substantial change in circumstances. Because Melissa remarried, she lost $500 per month in spousal support before the end of the sixty month period specified in the original stipulation. As the district court correctly found, remarriage of an ex-spouse does not automatically terminate spousal support; it shifts the burden to the support recipient to show extant extraordinary circumstances that justify continuing the support. *In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985). Melissa did not make any showing that would justify continued receipt of alimony. *See In re Marriage of Johnson*, 781 N.W.2d 553, 558 (Iowa 2010) (explaining the failure to show any extraordinary circumstances warrants termination of spousal support after remarriage). Accordingly, Melissa's spousal support was appropriately terminated.

Melissa's remarriage and the consequent loss of spousal support alone may not be a substantial change in circumstances justifying modification of child support. *See Mears v. Mears*, 213 N.W.2d 511, 516 (Iowa 1973) (holding remarriage of ex-spouse and loss of income not to

be a substantial change in circumstances). But they are clearly factors the court shall consider. Iowa Code § 598.21C(1)(*a*), (*g*), (*l*). Here, the loss of spousal support results in a decrease in the amount of money available each month with which Melissa can support the former couple's two children remaining in her physical custody. It is reasonable to conclude from the record that when Melissa accepted the original amount of $1500 per month in child support for three children, which was just sixty-one percent of the amount set by the temporary order, the receipt of $500 per month in spousal support figured in her evaluation of her ability to support herself and her children. Now, in light of the elimination of spousal support, Melissa has experienced a twenty-five percent reduction in the amount of money available each month with which to support herself and her two children from her first marriage.

The loss of the spousal support has had a significant effect on Melissa's income. *See In re Marriage of Lalone*, 469 N.W.2d 695, 697 (Iowa 1991) (considering amount of spousal support paid as one factor in child support determination). Melissa's gross income in 2009 was $7495, in 2010 it was $6252, and in 2011 it was $7075. In each of these years, $6000 of Melissa's gross income was spousal support paid by Scott. Melissa and her new husband Jeff had combined gross incomes of $45,691 in 2010 and $46,185 in 2011. Although Jeff has only a limited financial obligation to Melissa's children from her first marriage, we do consider his income as it relates to Melissa's financial condition and ability to support her children. *See, e.g.*, *In re Marriage of Gehl*, 486 N.W.2d 284, 287 (Iowa 1992) ("[T]he new spouse's income can be considered as it relates to the divorced custodial parent's overall financial condition and ability to support the child."); *Page v. Page*, 219 N.W.2d 556, 558 (Iowa 1974) (considering income of noncustodial parent's

spouse in deciding the appropriate amount of child support). Melissa and Jeff also have a child of their own, whom they must support on the couple's income. This new dependent is a consideration in deciding whether there has been a substantial change in circumstances. *See* Iowa Code § 598.21C(1)(*d*).

There was significant disagreement at the modification trial about Scott's income. Scott presented evidence that his net yearly income, averaging the years 2009 through 2011, was $138,056, or about $11,505 monthly. *See In re Marriage of Knickerbocker*, 601 N.W.2d 48, 53 (Iowa 1999) (explaining that when a person's income fluctuates, the court must average the person's income over a reasonable period of years). Melissa argues Scott's income is higher. She presented evidence that Scott's net income, again averaging the years 2009 through 2011, was $284,889, or about $23,741 monthly. The disparity results from a dispute over whether to calculate Scott's income using straight-line or accelerated-depreciation deductions under the Internal Revenue Code. *See* I.R.C. § 168 (2006). Notably, our caselaw favors the straight-line method of depreciation. *See Knickerbocker*, 601 N.W.2d at 52 (holding court of appeals properly recalculated income under straight-line method of depreciation); *In re Marriage of Gaer*, 476 N.W.2d 324, 329 (Iowa 1991) (holding that the ex-spouse "should be allowed a deduction for depreciation determined under the straight line method of depreciation rather than under the accelerated method"). In the 2008 temporary child support order, the district court found Scott's net monthly income to be $13,654.76.[2] Applying the straight-line method of depreciation, as this

---

[2]Although the parties disputed the income figure at the time of the temporary order, both rely on it here to compare Scott's income at that time to his income now. The temporary order takes into account the expenses of both parties and the decreases

court has done in the past, Scott's net monthly income has increased about seventy-four percent since just before the decree was entered.

Scott argues that it was within the contemplation of the district court when it entered the decree that his income would change from year-to-year. That may be true, but a district court's knowledge that a person's income fluctuates does not mean that a significant increase in that person's income cannot result in a finding of a substantial change in circumstances. Changed income remains one factor to consider in deciding whether there has been a substantial change in circumstances. *See* Iowa Code § 598.21C(1)(*a*). Moreover, mere knowledge of a fluctuating income is not the same as knowledge of income increases, especially significant income increases. We conclude the significant increase in Scott's income was not within the contemplation of the district court at the time of the decree. *See In re Marriage of Guyer*, 522 N.W.2d 818, 821 (Iowa 1994) (finding a significant increase in income not within district court's contemplation at the time of the decree); *cf. In re Marriage of Bergfeld*, 465 N.W.2d 865, 867, 870 (Iowa 1991) (finding a change in income was not within the court's contemplation where spouse worked at different jobs that paid varying wages and received unemployment before divorce, then afterward was rehired at his former job and received a significant increase in pay).

Unlike the district court and the court of appeals, we find that the evidence, when viewed as a whole, supports the conclusion that Melissa

---

in income Scott likely would experience because of rising gas prices affecting the profitability of his business. We give weight to a district court's factual determinations. *See In re Marriage of Fennelly & Breckenfelder*, 737 N.W.2d 97, 101 (Iowa 2007) (affirming district court decision to award liberal visitation based on record "replete with evidence of parties' devotion toward their children"). Given the care the court took in reaching a reasonable figure for Scott's net monthly income, we rely on it here.

has shown a substantial change in circumstances since the entry of the original decree, warranting a modification of child support. Likewise, we disagree with the conclusion that continued enforcement of the decree would not result in injustice to the children. It is true that Melissa agreed to a level of child support, which "becomes a final contract when it is accepted and approved by the court." *In re Marriage of Lawson*, 409 N.W.2d 181, 182 (Iowa 1987). When "merged in the dissolution decree," the stipulation "is interpreted and enforced as a final judgment of the court." *Prochelo v. Prochelo*, 346 N.W.2d 527, 530 (Iowa 1984). But "[p]arents cannot lightly contract away or otherwise modify child support obligations." *In re Marriage of Zeliadt*, 390 N.W.2d 117, 119 (Iowa 1986).

Iowa Code section 598.21B makes clear there is "a rebuttable presumption that the amount of child support which would result from the application of the guidelines . . . is the correct amount of child support to be awarded." Iowa Code § 598.21B(2)(*c*). The purpose of the child support guidelines is to provide for the children's best interests after considering each parent's proportional income. *See* Iowa Ct. R. 9.3(1); *see also McDermott*, 827 N.W.2d at 684 (explaining the purpose of the child support guidelines is to provide for the children's best interests "after consideration of each parent's proportional income"). Even with just two children in Melissa's custody, Scott's current child support obligation is significantly below the amount set by the guidelines. Considering Melissa's income figures for Scott utilizing straight-line depreciation, her loss of alimony, $600 in interest income reported by Melissa, and $20,000 in imputed annual income which reflects what Melissa could expect to earn with her skills and experience, and which Melissa agreed to have imputed to her, the guidelines worksheet submitted by Melissa at the modification trial sets a monthly support

amount of $3342. In view of these calculations, we cannot conclude that when Scott and Melissa stipulated to the monthly child support figure, they did so with the best interests of three children in mind.

Melissa testified at the modification trial about her motivation for agreeing to the below-guidelines child support amount. She testified that she wanted her children and wanted the divorce proceedings to end; she acknowledged making a "bad deal" with respect to child support. There is no reason to doubt the truth of this testimony. However, it is not for the parties to determine an appropriate level of child support. By statute, establishing an appropriate level of child support is ultimately the responsibility of the district court after being fully advised of the circumstances of the parties.

Iowa Code section 598.21B prohibits a court from considering a variation from the child support guidelines "without a record or written finding, based on stated reasons, that the guidelines would be unjust or inappropriate." Iowa Code § 598.21B(2)(*d*). We have repeatedly noted that courts must comply with this requirement. *See State ex rel. Nielsen v. Nielsen*, 521 N.W.2d 735, 737 (Iowa 1994) (explaining a "court has no authority to vary from the guidelines without a written finding that the guideline amount would be unjust or inappropriate"); *Guyer*, 522 N.W.2d at 820 n.1 (noting the requirement and that a decree "fell woefully short of this statutory requirement"); *see also In re Marriage of Brown*, 487 N.W.2d 331, 333 (Iowa 1992) ("Our child support guidelines are to be strictly followed unless their application would lead to an unjust or inappropriate result.").

On January 27, 2009, the district court was presented with a stipulation signed by the parties and a decree prepared by counsel. The district court signed the decree that same date. There is nothing in the

record that discloses the district court was advised by counsel that the child support deviated from the child support guidelines. Accordingly, it is not surprising that the district court did not make a record on the reasons for the deviation from the guidelines or make written findings that the application of the guidelines would be unjust or inappropriate under the circumstances. But this is precisely the purpose of the statute.

The written findings and reasons are vital to a later determination by the court about whether there has been a substantial change in circumstances. That is the case whether the child support modification is sought under Iowa Code section 598.21C(1) or under section 598.21C(2)(*a*).[3] If the parties want the district court to deviate from the child support guidelines, and also want to avoid subsequent modification of that award based on an evaluation of changed circumstances or the ten percent deviation, counsel and the district court need to insure that the dissolution decree explains the reasons for the deviation and that those reasons are factually and legally valid. *See* Iowa Ct. R. 9.11; *see also In re Marriage of Nelson*, 570 N.W.2d 103, 108 (Iowa 1997) (explaining a modification order that deviated from the child support guidelines without explanation could not be used as a basis to determine whether there had been a substantial change in circumstances). Absent compliance with the statute and our rules, there is no reason to assume that the initial child support amount set forth in the decree has any

---

[3]Iowa Code section 598.21C(2)(*a*) provides that "[s]ubject to 28 U.S.C. § 1738B, but notwithstanding [section 598.21C(1)], a substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines."

proper basis, or that it should be used as the basis for subsequent modification proceedings.

**IV. Disposition.**

The original child support order was not consistent with the statute or our rules governing child support and, as such, does not provide a proper basis on which to base a decision on modification of child support. However, based on this record, Melissa has shown that there has been a substantial change in circumstances since the entry of the underlying decree warranting a modification of child support under both Iowa Code section 598.21C(1) and section 598.21C(2)(*a*). This case is remanded to the district court for a determination of an appropriate order for child support. We affirm the holding of the court of appeals denying Scott's request for attorney fees. Court costs associated with this appeal are assessed against Scott.

**DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**