**IN THE COURT OF APPEALS OF IOWA**

No. 14-1798
Filed October 14, 2015

**IN RE THE MARRIAGE OF PETER A. EIKAMP
AND LISA EIKAMP**

**Upon the Petition of
PETER A. EIKAMP,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning
LISA EIKAMP,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, Michael J. Moon,

Judge.


        Peter Eikamp appeals, and Lisa Eikamp cross-appeals, from a

modification order.  **AFFIRMED AS MODIFIED AND REMANDED.**



        Barry S. Kaplan of Kaplan & Frese, L.L.P., Marshalltown, for appellant.

        Christy R. Liss of Clark, Butler, Walsh & Hamann, Waterloo, for appellee.



        Heard by Doyle, P.J., Eisenhauer, S.J.,* and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**EISENHAUER, Senior Judge.**

Peter Eikamp appeals the denial of his petition to modify the child custody and support provisions of the decree dissolving his marriage to Lisa Eikamp. He contends joint physical care is not in the children's best interests. On cross, appeal, Lisa contends the court erred in calculating Peter's child-support obligation when it granted her counterclaim for modification. Lisa also requests she be awarded appellate attorney fees.

### I. Background Facts and Proceedings.

The parties' marriage was dissolved in May 2013. The decree dissolving the marriage incorporates the parties' stipulation regarding the issues to be determined in the dissolution proceeding. Among other things, the parties stipulated to joint physical care of their three minor children and agreed neither party would pay child support. While the stipulation states the parties anticipated "they will each have the children approximately 50% of the time," neither the stipulation nor the dissolution decree further specify the terms of custody arrangement.

Although the parties envisioned splitting time with the children, this did not happen immediately following the dissolution. Exactly what occurred between June and November 2013 is unclear. Peter testified the children resided primarily with him in the months following the dissolution and he occasionally stayed at Lisa's apartment when the children were in her care at her request. In his version of events, he assumed the role of primary caretaker because Lisa was experiencing emotional difficulties and instability in the wake of the divorce. He agreed they stayed at each other's residences with the children on occasion,

but stated this was because Lisa did not want the responsibility of the having the children on her own.

In contrast, Lisa testified she was not struggling prior to November 2013. In her version of events, the parties continued to reside together with the children following the dissolution even though she obtained an apartment. According to Lisa, she primarily stayed with Peter and the children at the marital residence, although occasionally they stayed at her apartment. Lisa admits Peter was never clear about the status of their relationship following the divorce but she believed they "had the probability of getting back together."

What is clear is that things changed for the worse in November 2013. Peter's grandmother passed away, and he did not allow Lisa to attend the funeral. At that point, Lisa realized her relationship with Peter was over and, in her own words, "things kind of started to spiral down." Lisa began to engage in self-harming behavior by cutting herself, and concerns were expressed regarding her suicidal ideation and alcohol use.

Lisa was voluntarily admitted to Covenant Medical Center for observation in November 2013 and discharged two days later. She was prescribed medication but believes she was overmedicated. She did not feel like herself, and her self-harming behavior worsened. Because she did not feel stable upon discharge, Lisa did not exercise her full rights under the child custody provisions of the decree. Instead, she limited the time she spent with the children to visits supervised by her parents.

Lisa was hospitalized again in January 2014 after she lost control of her car during a snowstorm and drove into a ditch. The sheriff's deputy who assisted

Lisa was concerned she was a danger to herself and took her to Covenant Medical Center. Lisa was admitted for observation and discharged the next day.

Lisa was admitted to Covenant Medical Center a third time in February 2014 after going to Peter's house at 10:00 p.m., intoxicated and bleeding from a self-inflicted cut on her arm. Lisa remained at Covenant for one week before she was discharged. Upon her discharge, she changed psychiatrists and medication and began feeling better.

On the night of March 8, 2014, Lisa went to Peter's home, where the children were staying. She was distraught because Peter had not returned her telephone calls or text messages for more than two hours. While at the home, she took a knife from the kitchen and held it to her chest, threatening suicide. Although Peter took the knife from her, two of the children heard Lisa tell Peter to give her keys back so she could go kill herself. Lisa returned home and called law enforcement to falsely report Peter had physically assaulted her. Lisa was arrested one week later and charged with two counts of child endangerment. At the time of trial, those charges were still pending.

On March 14, 2014, Peter filed a petition seeking to modify the child custody and support provisions of the dissolution decree, requesting he be granted physical care of the children. Lisa counterclaimed seeking modification of the provisions of the decree relating to child support, medical support, and the postsecondary education subsidy.

After Peter filed the petition to modify, Lisa requested the child custody provisions of the decree be implemented. Since then, the parties have alternated physical care of the children on a weekly basis.

The matter came to a trial in October 2014. The district court entered its order two days later. It dismissed Peter's petition to modify, sustained Lisa's counterclaims to modify the child-support obligation and postsecondary education subsidy, and awarded Lisa $2500 in attorney fees. Peter filed a timely notice of appeal.

## II. Scope and Standard of Review.

We review modification rulings de novo. *See* Iowa R. App. P. 6.907. Although we make our own findings of fact, we give weight to the trial court's findings regarding witness credibility but are not bound by them. Iowa R. App. P. 6.904(3)(g). Our overriding consideration is the children's best interests. Iowa R. App. P. 6.904(3)(o).

## III. Modification of Child Custody.

Peter appeals the portion of the order dismissing his petition to modify the child custody and support provisions of the decree. As is often said, "once custody of children has been fixed it should be disturbed only for the most cogent reasons." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

> "To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's wellbeing."

*Id.* (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)).

Peter contends that since the decree was entered, "Lisa undertook a pattern of disruptive and unsafe behavior that severely impaired her ability to parent her children in the role of joint custodian." We agree Lisa's ability to parent the children was impaired by her mental health. However, as the district court found, the changes in Lisa's behavior "were temporary in nature and not permanent or continuous." There is no evidence of any mental health issues that impaired Lisa's ability to parent before November 2013. At the time of trial, Lisa testified she was taking medication for depression and anxiety, but no evidence of Lisa's current mental health diagnosis or how it impairs her ability to safely and effectively parent the children was offered or received. Rather, in the six months leading up to trial, the children were in Lisa's care every other week. At trial, Peter agreed Lisa was currently caring for the children appropriately and the children had not been placed in harm's way due to Lisa's recent behavior. The parties were able to co-parent effectively during this period, with both parents communicating regarding the children's activities and their welfare.

When looking at Lisa's behavior throughout the children's lives, it appears the four-month period from November 2013 until March 2014 was an anomaly. With the right dose of the right medication and therapy to address Lisa's underlying depression and anxiety, she is again providing the quality care for the children she provided during the marriage. The change exhibited between November 2013 and into March 2014 was temporary, rather than permanent.

Because the evidence does not support Peter's claim this is a permanent change, we need not address the question of whether Peter has an ability to minister more effectively to the children's well-being. *See In re Marriage of*

*Thielges*, 623 N.W.2d 232, 238 (Iowa Ct. App. 2000) (noting that in addition to proving a substantial change of circumstances supporting modification, the moving party "must also prove . . . an ability to minister more effectively to the well-being of the parties' children"). We affirm the dismissal of Peter's petition to modify the dissolution decree.

### IV. Modification of Child Support.

On cross-appeal, Lisa contends the district court erred in calculating the amount of Peter's child support obligation. She also requests Peter's child support obligation begin on July 15, 2014, rather than on November 1, 2014, as ordered by the district court.

While the child support provisions of a dissolution decree are typically final as to the circumstances existing at the time of dissolution, the court may modify child support when there has been a substantial change in circumstances. Iowa Code § 598.21C(1) (2013). In determining whether there has been a substantial change in circumstances, we consider all relevant factors, "including changes in employment, income, earning capacity, health, and medical expenses of a party. Of course, the changed circumstances must be material and substantial, essentially permanent, and not within the contemplation of the court at the time of the decree." *In re Marriage of Sisson*, 843 N.W.2d 866, 870-71 (Iowa 2014) (citation omitted). A substantial change exists if "the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines." Iowa Code § 598.21C(2)(a).

There is nothing in the record of the dissolution proceedings regarding the parties' earnings at the time of dissolution. However, the evidence presented at

the modification hearing clearly shows the disparity in the parties' earnings at the time of dissolution would have required Peter to pay Lisa child support under the child support guidelines. While Lisa agreed to forgo child support in the parties' stipulation,[1] which was incorporated into the dissolution decree, "[p]arents cannot lightly contract away or otherwise modify child support obligations." *In re Marriage of Mihm*, 842 N.W.2d 378, 384 (Iowa 2014).

A variation from child support guidelines is prohibited "'without a record or written finding, based on stated reasons, that the guidelines would be unjust or inappropriate.'" *Id.* at 385 (quoting Iowa Code § 598.21B(2)(d)).

> If the parties want the district court to deviate from the child support guidelines, and also want to avoid subsequent modification of that award based on an evaluation of changed circumstances or the ten percent deviation, counsel and the district court need to insure that the dissolution decree explains the reasons for the deviation and that those reasons are factually and legally valid. Absent compliance with the statute and our rules, there is no reason to assume that the initial child support amount set forth in the decree has any proper basis, or that it should be used as the basis for subsequent modification proceedings.

*Id.* (citations omitted).

Here, neither the stipulation nor the dissolution decree provides any reason for a variation from the child support guidelines. The parties' stipulation merely states "[t]hat based upon the respective income of the parties and the joint physical care arrangement, no child support shall be paid from one person to the other." Because there was no basis for the decree to deviate from the child support guidelines, it is not a proper basis on which to base a decision on modification of child support. *See id.* at 386. Therefore, we may modify if a

---

[1] Lisa was not represented in the dissolution proceedings.

substantial change in circumstances since the entry of the underlying decree warrants modification of child support. *Id.* This includes a modification based on Iowa Code section 598.21C(2)(a) for a variance of "ten percent or more from the amount which would be due pursuant to the most current child support guidelines." Peter does not contest there is a variation of more than ten percent from the child support awarded in the decree to what he would pay under the guidelines.

The only question presented to us in this appeal is the amount of the parties' income and the date Peter's child support obligation should begin. For purposes of calculating child support, the district court determined Peter's annual income to be $108,000 and Lisa's to be $30,000, making Peter's monthly child support obligation $1210.25 and Lisa's obligation $416.12. The court ordered Peter to pay Lisa the $794.13 difference in obligations each month, with payments beginning on November 1, 2014.

Lisa argues it is unreasonable and inequitable to impute a $30,000 annual income to her based on her business's earnings. She claims the business only earned that much in 2012 when the parties were married and Peter's farm income was infused into her business. She further claims the 2012 earnings were atypical and every other year the business "had usually been in the red from its inception in 2006." She asks this court to recalculate the child support obligation using what she estimated to be her 2014 expected income of $12,000 or a three-year average of income from 2012 through 2014 in the amount of $18,230.

In 2012, Lisa's business had its best year, earning $32,232. In 2013, she earned only $10,460. Between January 1 and October 9 of 2014, Lisa had earned $15,285.21. Extrapolating earnings from this figure, the court estimated her 2014 earnings were expected to be $20,380. We find this $20,380 figure to be the proper basis on which to calculate Lisa's child support obligation.

Lisa also argues the court erred in finding Peter's annual income is $108,000. Peter is employed as an insurance agent. Before April 2014, he received a monthly income plus commissions and bonuses for his work. In April 2014, his salary structure changed to increase his monthly salary to $9000 but eliminate commissions and bonuses.

In 2013, he earned approximately $102,957 as an insurance agent.[2] Beginning in April 2014, his annual salary is $108,000. Peter received $7003.48 in bonuses and $783.76 in commissions in 2014 before his salary structure changed. Lisa argues Peter's 2014 salary should be estimated at $125,000 to include any bonuses and commissions he earned before April of that year. However, the bonuses and commissions were received when Peter earned a lower salary; the higher salary Peter now earns compensates him for the lack of bonus and commissions. It would be misrepresentative to attribute to Peter the higher salary earned after April 2014 for the entirety of 2014, and add to it the bonuses and commissions Peter received prior to April 2014 when he was earning a lower salary. We concur in the district court's finding Peter's annual salary is $108,000.

---

[2] During the marriage, Peter also farmed land owned by Lisa's grandfather. Because he ceased this work when the parties divorced, a discussion of Peter's farming income is not relevant.

We modify the child support provisions to provide Peter should pay as his child support obligation the difference between the amount of child support due and owing from him as calculated by the district court in the modification order and the amount due and owing from Lisa based upon an annual income of $20,380. We remand to the district court to calculate Peter's child support obligation consistent with this opinion.

Lisa also contends the court erred in ordering the child support obligation begin on November 1, 2014. She requests this court modify the order to provide it begin on July 15, 2014. "The trial court has the discretion to decide if child support payments will begin from the petition filing date or from the date of the modification order." *In re Marriage of Bonnette*, 492 N.W.2d 717, 722 (Iowa Ct. App. 1992). Finding no abuse of discretion, we affirm the portion of the order requiring child support to begin on November 1, 2014.

### V. Appellate Attorney Fees.

Finally, Lisa requests we award her $4000 in appellate attorney fees and tax the costs of the appeal to Peter. The decision to award appellate attorney fees is within this court's discretion. *See* Iowa Code § 598.36. In making this decision, we consider the needs of the party requesting appellate attorney fees, the ability of the other party to pay, and whether the party was obligated to defend the trial court's decision on appeal. *In re Marriage of Krone*, 530 N.W.2d 468, 472 (Iowa Ct. App. 1995).

Because Peter earns significantly more than Lisa and Lisa was obligated to defend the court's child custody determination on appeal, we award Lisa $4000 in appellate attorney fees.

**VI.  Conclusion.**

We affirm the order denying Peter's petition to modify child custody and granting Lisa's counterclaim for modification of child support.  We modify the child support calculation and remand.  We do not retain jurisdiction.  Costs of this appeal are taxed to Peter.

**AFFIRMED AS MODIFIED AND REMANDED.**