**IN THE COURT OF APPEALS OF IOWA**

No. 16-1256
Filed March 8, 2017


**IN RE THE MARRIAGE OF TIFFANY KAY BOUCHARD
AND JEREMY WILLIAM BOUCHARD**

**Upon the Petition of
TIFFANY KAY BOUCHARD,**
        Petitioner-Appellee,

**And Concerning
JEREMY WILLIAM BOUCHARD,**
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Cass County, James M.

Richardson, Judge.


        Jeremy Bouchard appeals the district court's denial and dismissal of his

petition to modify his and Tiffany Bouchard's dissolution decree to change the

visitation provisions and reduce his child support obligation.  **AFFIRMED.**


        P. Shawn McCann of McGinn, Springer & Noethe, P.L.C., Council Bluffs,

for appellant.

        Jonathan Mailander of Mailander Law Office, Atlantic, for appellee.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

Jeremy Bouchard appeals the district court's denial and dismissal of his petition to modify his and Tiffany Bouchard's dissolution decree to change the parenting time provisions and reduce his child support obligation. Upon our de novo review of the record, we affirm.

### I. Background Facts and Proceedings.

In December 2013, the district court approved Jeremy and Tiffany's joint stipulation and entered a decree dissolving their marriage. The parties agreed to joint legal custody of their child, I.B., born in 2011. They also agreed to joint physical care, with Tiffany having care of their child every Monday beginning at noon through Friday at noon, and Jeremy having care of the child from noon on Friday through Monday at noon. They also agreed to a holiday visitation schedule. Jeremy agreed to pay Tiffany $400 per month in child support. Additionally, the parties agreed Jeremy would be responsible for providing health insurance for their child should the child become ineligible for Medicaid coverage, in which case "[c]hild support shall then be adjusted accordingly."

In March 2016, Jeremy filed a petition to modify the parties' dissolution decree. His petition stated there had been a substantial change in circumstances since entry of the original decree warranting modification. Specifically, he asserted their child would be starting kindergarten in the fall of 2016, which required a new parenting schedule. He maintained it would be in the "child's best interest that [he] be awarded the parenting time during the school week and [Tiffany] be awarded parenting time on the weekends" because he worked from home and would not have to place the child in the care of others,

unlike Tiffany, who worked during the week. Additionally, he advised he was now providing medical insurance for their child, and he requested his child-support payment be adjusted accordingly. Tiffany answered and denied there had been a substantial change in circumstances.

A hearing on the petition was held in June 2016. The court asked Jeremy to clarify his requested relief, and Jeremy advised he was seeking a change of the parties' shared care visitation schedule[1]—he was not seeking physical care of their child. He argued a lower burden would therefore apply, and he would only need to show a material change in circumstances.

Following the hearing, the district court entered its ruling denying and dismissing Jeremy's modification petition in its entirety. The court explicitly concluded that Jeremy failed to establish the necessary proof for modification of custody and implicitly concluded Jeremy failed to meet his burden of proof to modify his parenting schedule. *See In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009) (discussing the applicable burden of proof in both circumstances). The court found that the child becoming school age was not a significant or substantial change in circumstances, and because the parties originally agreed Tiffany had custody of the child Monday through Friday, the court reasoned that Tiffany's choice of school for the child should prevail. Finally, the court declined to modify Jeremy's child support obligation, explaining the parties previously agreed to the amount of child support, which "was not

---

[1] In shared- or joint-physical-care cases, the term "visitation" is frequently used interchangeably with the terms "parenting time," "parenting schedule," or "parenting plan."

supported by financial documentation at the time of the decree," and it would not disturb the amount now.

## II. Standard of Review.

Jeremy appeals the district court's ruling on both points. He also asserts the district court applied the wrong standard of proof in reaching its decision. Our review on appeal is de novo, which requires that we "make our own findings of fact." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). This also means the application of the wrong standard of proof by the district court, if it did so, is obviated by our de novo review. *See Brown*, 778 N.W.2d at 54. We do give the district court's fact-findings weight, especially any credibility determinations made, though we are not bound by them. *See In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014); *see also* Iowa R. App. P. 6.907. "The district court has reasonable discretion in determining whether modification is warranted, and we will not disturb that discretion unless there is a failure to do equity." *In re Marriage of Maher*, 596 N.W.2d 561, 565 (Iowa 1999).

## III. Discussion.

### A. Shared-Care Parenting Schedule.

"A parent seeking to modify visitation must only establish that 'there has been a *material change in circumstances* since the decree and that the requested change in visitation is in the best interests of the [child].'" *Brown,* 778 N.W.2d at 51-52 (citation omitted). This is the burden of proof to be applied in the modification of a joint-physical-care parenting schedule. *See id.* at 53. Jeremy argues that "[s]ince the decree there has been a change of circumstances that justifies consideration of a modification of the parenting plan

or visitation schedule," citing the following as changes that justify modification: (1) Tiffany now has an 8:00-5:00 job, so she is no longer a stay-at-home mother with a flexible schedule without the need for child care; (2) "Tiffany has had some domestic violence in her household," and (3) the parties have differences of opinions concerning which school the now school-aged child will attend. Even assuming these are all changes that have occurred since entry of the parties' dissolution decree, we do not find they justify a change in the parenting plan to which the parties agreed just four years ago.

The most significant of these "changes" are the allegations of domestic abuse in Tiffany's household. Our de novo review of the record shows there was one incident of domestic violence that occurred at Tiffany's home in 2014. There is no evidence that the child was affected by the occurrence or that any additional events have occurred. While we do not take domestic violence lightly, Jeremy himself believed shared care remained in the child's best interests. Though perhaps a "change," under the facts of this case, it does not justify changing the parenting schedule.

Similarly, Tiffany's employment status may constitute a "change" since entry of the decree, but we do not find being employed full-time, working ordinary hours is something that justifies changing the parenting schedule. Jeremy himself admitted that by the time of the hearing, Tiffany had used day care "for a few years now." Additionally, considering the child would be enrolled in school full-time, the child's time at day care or at an after school program is minimal.

The heart of this matter was the school-enrollment issue. Jeremy's petition alleged a substantial change in circumstances based only upon the

child's school age, and he admitted that although he did have other concerns, the school issue was really the only issue. He testified the parties did not discuss the child's schooling when they entered into the stipulation, though he admitted he was represented by counsel when he entered into the stipulation; Tiffany was not. He also testified he believed Tiffany had "dropped the ball" in not enrolling the child in preschool, but Tiffany testified she placed their child on the waiting list, which she told Jeremy. This is simply not enough to justify a reversal in the parties' parenting agreement.

Even considering all three "changes" together, we do not find them sufficient to justify modification of the parties' prior parenting schedule agreement. Nor do these changes establish modification of the parties' parenting plan is in the child's best interests. Consequently, we agree with the district court's denial of Jeremy's petition for modification concerning the parties' parenting schedule.

### B. Child Support.

Jeremy also challenges the district court's denial of his request to modify his child support obligation. Though he stated in his petition that modification of his support award was justified based upon his provision of insurance for their child, he submitted at the hearing his "requests" to the court, including a request that his child support obligation be reduced to $128.11 based upon Tiffany's increased income and the child-support guidelines. Now on appeal, he asserts there was a substantial change in circumstances "because the child support varied by ten percent or more comparing the decree amount and the current child support guideline amount."

Although it is, perhaps, mathematically apparent that there possibly was a ten-percent variance, we can find no evidence in the record that Jeremy specifically requested his support obligation be modified for that reason, as he argues here. In his brief, Jeremy does not direct us to where the ten-percent-variance claim was preserved; rather, he merely asserts he preserved error by timely appealing from the district court's ruling. However, a timely notice of appeal "has nothing to do with error preservation." *State v. Lange*, 831 N.W.2d 844, 846-47 (Iowa Ct. App. 2013); *see also* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (Fall 2006) (footnote omitted) (explaining that "[a]s a general rule, the error preservation rules require a party to raise an issue in the trial court and obtain a ruling from the trial court"). Additionally, no Iowa Rule of Civil Procedure 1.904(2) motion was filed to request the court rule on that claim to preserve error for appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002); *see also State Farm Mut. Auto. Ins. Co. v. Pflibsen*, 350 N.W.2d 202, 206-07 (Iowa 1984) ("It is well settled that a rule [1.904(2)] motion is essential to preservation of error when a trial court fails to resolve an issue, claim, defense, or legal theory properly submitted to it for adjudication."). We do not find Jeremy preserved the-substantial-change-in-circumstances-based-upon-a-ten-percent-variance issue for our review. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) (holding appellate court may consider error preservation on its own motion).

The only basis for modification of his child support obligation asserted in his petition was that he was now providing insurance for the child. However, he

testified the child was still covered by Medicaid. He also testified the insurance was provided through his employer at "little or no cost" to him. This does not constitute a substantial change in circumstance.

Finally, assuming he preserved the issue of Tiffany's increased income as evidence of a substantial change in circumstances by mentioning it in his "requests" at trial, we cannot say the district court erred in declining to modify Jeremy's child support obligation on this basis. It is clear the parties agreed to the original award even though it deviated from the guidelines. As our supreme court recently stated:

> If the parties want the district court to deviate from the child support guidelines, and also want to avoid subsequent modification of that award based on an evaluation of changed circumstances or the ten percent deviation, counsel and the district court need to insure that the dissolution decree explains the reasons for the deviation and that those reasons are factually and legally valid. Absent compliance with the statute and our rules, there is no reason to assume that the initial child support amount set forth in the decree has any proper basis, or that it should be used as the basis for subsequent modification proceedings.

*In re Marriage of Mihm*, 842 N.W.2d 378, 385 (Iowa 2014) (internal citations omitted). Like in *Mihm*, there is nothing in the record that evidences the dissolution court was advised that the child support deviated from the child support guidelines. *See id.* And, as noted above, Tiffany was not represented at that time. But unlike *Mihm*, there is no evidence here that continued enforcement of the decree would result in injustice to the child. 842 N.W.2d at 384. Given the original deviance from the guidelines without explanation, or, as the district court pointed out, any financial documentation, we cannot say the change constitutes a

substantial change in circumstances since the entry of the underlying decree warranting modification of Jeremy's child support obligation.

### C. Appellate Attorney Fees.

Tiffany requests an award of attorney fees. Awarding appellate attorney fees in dissolution cases rests within our discretion, and we consider the requesting party's needs, the other party's ability to pay, and whether the party was required to defend the district court's decision on appeal. *See In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). After carefully considering these factors, we award Tiffany $2000 in appellate attorney fees. Costs are assessed to Jeremy.

### IV. Conclusion.

Because we agree with the district court's denial of Jeremy's petition for modification of the parties' parenting schedule and his child support obligation, we affirm its ruling denying and dismissing his petition.

**AFFIRMED.**