# IN THE COURT OF APPEALS OF IOWA

No. 19-2028
Filed August 19, 2020

IN RE THE MARRIAGE OF JILL N. BROCK
AND BOBBY D. BROCK

Upon the Petition of
JILL N. BROCK, n/k/a JILL N. KETELSON,
    Petitioner-Appellee,

And Concerning
BOBBY D. BROCK,
    Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Dallas County, Randy V. Hefner,

Judge.

        Bobby Brock appeals an order modifying the decree that dissolved his

marriage to Jill Ketelson.  **AFFIRMED.**


        Jason Springer of Springer Law Firm, PLLC, Madrid, for appellant.

        Misheal Waller, Woodward, for appellee.


        Considered by Tabor, P.J., and May and Greer, JJ.

**MAY, Judge.**

Bobby Brock and Jill Ketelson are divorced. In this action, the district court modified their dissolution decree. Bobby appeals. We affirm.

Bobby and Jill have two children. One was born in 2004, the other in 2009. In November 2013, the parties' marriage was dissolved through a stipulated decree. It awarded joint legal custody and joint physical care. And it included this parenting schedule:

That consistent with the award of joint physical care, the parties shall exercise the following parenting schedule with their minor children:

| MON | TUES | WED | THURS | FRI | SAT | SUN |
|------|------|-------|--------|-------|-------|-------|
| Jill | Jill | Bobby | Bobby | Jill | Jill | Jill |
| Jill | Jill | Bobby | Bobby | Bobby | Bobby | Bobby |

The decree also included a finding that, because the parties were sharing expenses, neither should pay child support.

Five years later, in November 2018, Jill commenced this modification action. Her petition asked for physical care.[1]

In May 2019, the parties mediated. They signed a document entitled "Stipulations to Modify Decree of Dissolution," which we refer to here as the "Stipulation." Through the Stipulation, Jill and Bobby agreed that "since the entry of the original decree, there has been a material change in circumstances warranting [m]odification of the original [d]ecree." They also agreed that "[s]aid

---

[1] Jill's petition requested "primary physical care." But the Iowa Code (2018) does not use the phrase "primary physical care" and instead uses the phrase "physical care." *See* Iowa Code § 598.41(5)(b). We follow the Code's lead.

changes include, but are not limited to the following: a. [Jill] is a more fit and proper person to have primary physical care of the parties' minor children; b. [Jill] can more adequately provide for the parties' minor children's [sic][.]"

Even so, the Stipulation included no express agreement to change the physical care arrangement. But it did include an agreement "that a change in circumstances" warrants "a modification of" Bobby's parenting time "with the minor child[ren]." It also specified the appropriate "modification," namely, that Jill would have the children an extra day (Wednesday nights) "[d]uring the school year," but Bobby would make up the missed days "during [w]inter break, [s]pring break and any other breaks from school."[2] The Stipulation "reserve[d]" one "issue for the [c]ourt to determine," namely, "whether they shall share expenses or whether child support shall be entered."

It appears the parties expected Jill to promptly file the Stipulation and present it for judicial approval. For reasons that will be discussed, however, this did not occur.

Months passed. The case was tried in late October. Bobby asked the court to enforce the Stipulation. Jill asked for physical care.

In early November, the district court entered its ruling. Among other things, the court concluded (1) "Jill has proven by clear and convincing evidence that substantial and material changes in circumstances have occurred since the 2013 decree was filed"; (2) joint physical care has failed and should be terminated; and (3) "Jill has also proven that she would be the superior primary care parent." So

---

[2] The Stipulation included various other features, such as agreements on summer vacation. Neither party suggests those other features should impact our analysis.

the court awarded physical care to Jill subject to visitation for Bobby. The court also ordered Bobby to pay child support plus $1500 of Jill's attorney fees.

On appeal, Bobby raises several issues. First, Bobby contends the Stipulation should have been enforced and, therefore, the district court should not have disturbed the decree's joint-physical-care arrangement. Second, Bobby contends no substantial change in circumstances justified a change in child support. Finally, Bobby contends the district court erred in awarding attorney fees to Jill. Indeed, Bobby contends we should remand for entry of an award of attorney fees in his favor.

We apply different standards of review to different issues. We review the grant or denial of attorney fees for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). Conversely, we review physical care and child support determinations de novo. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). Still, we give weight to the fact findings of the trial court, who is "greatly helped in making a wise decision about the parties by listening to them and watching them in person." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted). As Judge Doyle has properly observed:

> [W]e give careful consideration to the findings of the trial court . . . because the district court, unlike this court on appeal, has the opportunity "to view, firsthand, the demeanor of the witnesses when testifying." A witness's facial expressions, vocal intonation, eye movement, gestures, posture, body language, and courtroom conduct, both on and off the stand, are not reflected in the transcript. Hidden attitudes, feelings, and opinions may be detected from this "nonverbal leakage." Thus, the trial judge is in the best position to assess witnesses' interest in the trial, their motive, candor, bias and prejudice.

*In re Marriage of Rademacher*, No. 11-0798, 2011 WL 5868041, at *3 (Iowa Ct. App. Nov. 23, 2011) (citations omitted). We will affirm unless the district court "failed to do substantial equity." *Boatwright v. Lydolph*, No. 18-0532, 2019 WL 719026, at *1 (Iowa Ct. App. Feb. 20, 2019) (citation omitted).

We begin our review with Bobby's arguments about the Stipulation. As Bobby properly notes, "[s]tipulations in dissolution and modification actions are treated as contracts under Iowa law." *In re Marriage of Oehler*, No. 98-1257, 1999 WL 710820, at *3 (Iowa Ct. App. Aug. 27, 1999). Importantly, though, "[a] stipulated settlement should be approved and enforced only if the district court determines the settlement will not adversely affect the best interests of the parties' children." *In re Marriage of Handeland*, 564 N.W.2d 445, 446 (Iowa Ct. App. 1997).

The record is clear, however, that the district court did not approve the Stipulation. Moreover, as we read the record, the district court did not believe the Stipulation was consistent with the children's best interests.

Our task, then, is to decide whether the district court was right. Or, instead, was the district court obligated to enforce the Stipulation because it would "not adversely affect the best interests of the parties' children"? *See id.*

To answer these questions, we begin with a review of the Stipulation itself. We agree with Bobby that, although the Stipulation could be clearer, it anticipates that joint physical care would continue.[3] This reading is supported by (1) the absence of an agreement to end joint care—or even to request judicial review of

---

[3] To be sure, the parties' agreements that Jill "can more adequately provide" and "is a more fit and proper person to have primary physical care" seem to support a different view. Taken as a whole, though, we do not think the Stipulation contemplated a shift away from joint physical care.

the physical care arrangement; (2) the only-slightly-revised parenting schedule, which—consistent with joint care—is basically a fifty-fifty time-split; and (3) the clause suggesting that the *only* issue "reserve[d] . . . for the [c]ourt" to determine was child support.

So we think enforcement of the Stipulation would mean continued joint physical care. Yet, as the district court understood, there were serious problems with that arrangement.

This is not to say that things never worked. Immediately after the Stipulation was signed, for example, the parties successfully followed its parenting schedule. But then, in early June—just weeks after the Stipulation was signed—Bobby stopped accepting parenting time with the older child. This began a "four-month lapse of personal contact" between Bobby and the older child. This lapse occurred because the Iowa Department of Human Services began an investigation into allegations—which were ultimately confirmed—that Bobby's paramour assaulted the older child while in Bobby's care. Bobby chose to stop seeing the older child because, as the district court found, Bobby "could not risk the possibility that" his paramour, "who has a job in the medical or health care field, would be the subject of another complaint."

In light of these post-stipulation developments, the district court believed Jill was "justified in revoking her consent to the terms of the [S]tipulation and in instructing her attorney not to submit the [S]tipulation to the court for approval."[4]

---

[4] Bobby claims his "[c]onduct subsequent" to the signing of the Stipulation "should have no bearing on whether the contract was legal and should be enforced." Because he cites no authority for this proposition, we decline to adopt it. Moreover, as explained, our law clearly requires courts to engage in a best-interest analysis

But the district court's analysis did not stop there. The court examined the parenting situation as a whole. This broader and deeper inquiry led the court to conclude joint physical care must end. The court found:

> Jill has proven by clear and convincing evidence that substantial and material changes in circumstances have occurred since the 2013 decree was filed. The shared care plan adopted by the court has failed in significant respects that have directly and adversely affected the children's health, education and welfare. The parties have demonstrated an inability to agree upon, or even communicate about, significant medical care, discipline and education issues. The shared physical care plan will be terminated.

Like the district court, we conclude joint physical care is no longer consistent with the "children's health, education and welfare." And so we do not fault the district court for declining to enforce the Stipulation—which, as explained, appears to require joint physical care. *See id.* Nor do we accept Bobby's invitation to reinstate joint physical care.

We turn next to child support. Here again, Bobby focuses on the Stipulation. As just explained, enforcement of the Stipulation would have meant a continuation of joint physical care. And while the Stipulation would have changed Bobby's parenting "times," the total "amount of time spent with the minor children" would not have changed. "Therefore," Bobby argues, "no substantial or material change" justifies a change in child support.

We agree with Bobby that "to modify child support one must establish by a preponderance of the evidence that there has been a substantial change in the circumstances of the parties since the entry of the decree." *In re Marriage of*

---

before enforcing a stipulation. And events after the signing of a stipulation could certainly help courts decide whether and how the children might be impacted by enforcement of a stipulation. That was the case here.

*Kupferschmidt*, 705 N.W.2d 327, 332 (Iowa Ct. App. 2005); *see generally* Iowa Code § 598.21C (governing modification of child, spousal, or medical support orders). But there has been a change: While the decree called for joint physical care, the district court has terminated that arrangement. And for the reasons already explained, we decline to reverse that determination.

Moreover, we believe the termination of joint physical care is a material change in circumstances warranting reexamination of the child support arrangement. *See In re Marriage of Mihm*, 842 N.W.2d 378, 382 (Iowa 2014) (noting "a change in the physical custody of a child is often a substantial change that justifies refiguring child support"). And neither party questions the district court's calculation of child support. So we do not disturb it.

Next, Bobby claims that "[b]ecause the Stipulation[] . . . should be enforced," the district court's award of attorney fees to Jill "should be vacated." Moreover, Bobby claims we should remand for an award of fees in his favor.

As explained, though, we do not conclude the Stipulation should be enforced. So we decline to disturb the award of attorney fees to Jill. *See* Iowa Code § 598.36 (statutorily authorizing the court to award attorney fees). Nor do we see grounds for an award in Bobby's favor.

Finally, we address the parties' requests for appellate attorney fees. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to award fees, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (citation

omitted). After consideration, we decline to award appellate attorney fees to either party.

The trial court was correct on all issues. We affirm. We decline both parties' requests for appellate attorney fees.

**AFFIRMED.**