# IN THE COURT OF APPEALS OF IOWA

No. 20-0666
Filed April 14, 2021

IN RE THE MARRIAGE OF MARY A. WESSELS
AND JAMES C. WESSELS

Upon the Petition of
**MARY A. WESSELS, n/k/a MARY A. REKEMEYER,**
        Petitioner-Appellee,

**And Concerning**
**JAMES C. WESSELS,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter, Judge.

James Wessels appeals the district court order modifying the child support and expense-sharing provisions of the decree dissolving his marriage to Mary Wessels and the dismissal of his contempt application filed against her. **AFFIRMED AND REMANDED.**

Constance Peschang Stannard of Johnston, Stannard, Klesner, Burbidge & Fitzgerald, PLC, Iowa City, for appellant.

Taryn R. McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, for appellee.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

This case serves as yet another reminder that parties who attempt to circumvent the child support guidelines do so at their peril.

## I.      Factual Background

James and Mary Wessels[1] divorced in 2015.  The decree dissolving their marriage incorporated the terms of the parties' stipulation.  Via the stipulation, the parties agreed they would have joint legal custody and joint physical care of their two minor children.  Neither party was obligated to pay child support to the other, but James was obligated to pay for specified costs associated with the children attending private school, school lunches, and extracurricular activity expenses.

Prior to the dissolution, Mary earned modest income, mostly by operating her coffee shop business.  Mary earned only $4012 from the coffee shop in 2012 and $4057 in 2013.  Mary also taught fitness classes as a separate business, but it is unclear what income she earned from this business while she and James were married.  As the dissolution was on the verge of being finalized, Mary began working full-time at a recreational center and earned approximately $32,000 per year.  She worked at the recreational center from 2014 to 2015 until she took a job at a gym, where she earned $55,000.  Mary's income in 2015 was $46,695 and her income in 2016 was $57,736.  Mary stayed at this position while continuing to run her personal fitness business until June 2017.  Due to reshuffling of job responsibilities at the gym at which she worked, Mary was moved to a part-time position and her income declined significantly.  She tried to find another position

---

[1] Mary's surname was restored to her maiden name of Rekemeyer in the dissolution of marriage decree.

like her original position at the gym, but she was unsuccessful. Mary's 2018 tax return shows she made $4531 in wages from the gym and $6400 from her personal fitness business. She dipped into $21,000 of her savings to help pay her expenses that year. In January 2019, Mary further supplemented her income by starting a business buying and selling active-wear clothing.

Throughout the marriage and continuing to the present, James has owned and operated a business corporation that makes countertops for residential and commercial applications. The parties' joint tax returns from 2012 and 2013 show James drew yearly wages from the corporation of $66,137 and $46,486 respectively. James is also the sole owner of a separate limited liability company (LLC) that owns the real estate from which the countertop corporation operates. The countertop corporation pays rent to James's LLC for that real estate.

## II.    Procedural History

James filed a contempt action against Mary in March 2019. He alleged Mary had moved the children to public school without his consent, he had paid more than his allocated share of expenses related to the children's extracurricular activities and school lunches, and Mary had failed to reimburse him for that overpayment and certain other expenses. Mary countered with a contempt action of her own. She alleged James failed to pay his share of certain expenses he was obligated to pay, including dance lesson, cellphone, and uncovered medical expenses.

In addition to her contempt action, Mary filed a modification petition seeking to order James to pay child support according to the Iowa Child Support

Guidelines. She alleged her reduced income and James's failure to pay certain expenses warranted a modification.

At trial in January 2020, Mary submitted evidence showing she made a total of $28,150 from her job at the gym, her personal fitness business, and her active-wear sales business. James submitted child support guidelines worksheets claiming income of $48,955, based on his tax returns. Mary argued James's income was much higher than that based on James's acknowledged expenses that could not be supported by that income, his lifestyle that included purchasing expensive luxury items, his receipt of cash payments not reported on his tax returns, and his practice of purchasing personal items using corporate funds that resulted in unreported income.

Based on the evidence presented at trial, the district court concluded Mary earned gross annual income of $28,150, as she claimed. As for James, the district court did not accept James's claimed income as reported on his tax returns and determined James's gross income for purposes of calculating child support as $80,000. The court made this determination based on the fact James claimed monthly expenses of over $6000 which could not be supported on his claimed gross income and the fact that some of the rent the corporation paid to the LLC was "reinvested in the business," of which James was the sole owner.

The court found a substantial change in circumstances had occurred and modified the original dissolution decree to require James to pay Mary $560 per month in child support, starting on the first day of the month following the filing of the modification order. The court further modified the provisions related to paying the children's expenses by relieving James of the sole obligation to pay for private

school and requiring the parties to equally share the costs of the children's expenses as defined in the original stipulation, including the children's school-related expenses (including lunches), clothing, and extracurricular activities. The court also modified the obligation for payment of uncovered medical expenses in proportion to the parties' respective net monthly incomes, while James continued to be obligated to provide health insurance for the children, as he had agreed to do. The district court also ordered James to pay $1000 of Mary's attorney fees.

As to the reciprocal contempt actions, based on verbal comments stated on the record at the conclusion of trial and in the modification order that followed, the court found both parties had misinterpreted the original stipulation in different ways. The court dismissed both parties' contempt applications.

James appeals, arguing: (1) the district court erred by finding a substantial change of circumstances had occurred which justified a modification; (2) the district court erred by dismissing his contempt action; and (3) the district court erred by awarding Mary $1000 in trial attorney fees. Although Mary did not cross-appeal, she seeks an award of appellate attorney fees.

## III.   Standards of Review

Child support modification actions are reviewed de novo. *In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006). "Although we give weight to the factual findings of the district court, we are not bound by them." *In re Marriage of Mauer*, 874 N.W.2d 103,106 (Iowa 2016). The district court's ruling will only be disturbed when the ruling fails to do equity. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).

When a trial court refuses to find a party in contempt, the court has "broad discretion and 'unless this discretion is grossly abused, the [trial court's] decision must stand.'" *In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995) (quoting *State v. Lipcamon*, 483 N.W.2d 605, 607 (Iowa 1992)).

## IV. Substantial Change in Circumstances

James argues Mary has not shown a substantial change in circumstances sufficient to warrant a modification of James's child support obligation. His argument is three-pronged, and we will address each prong in turn.

### A. Information Upon Which to Base Modification

James first argues the parties agreed to deviate from the child support guidelines in their original stipulation and, with no income information accompanying the original stipulation or factual findings by the judge that approved the original stipulation as to why deviation was allowed, there is no basis for finding a substantial change of circumstances.

James's argument fails for several reasons. First, James misunderstands what is being compared to determine whether a modification of child support is warranted. He focuses on the fact the parties generally have the same jobs and live in the same places. Therefore, he argues, there is no substantial change in circumstances. This argument ignores the fact that the comparison of the child support obligation, not the income that supports the obligation, can justify modification of child support. Iowa Code section 598.21C(2) (2019) provides for a per se change of circumstances justifying modification, irrespective of the factors set forth in section 598.21C(1), "when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most

current child support guidelines." *See In re Marriage of Mihm*, 842 N.W.2d 378, 385–86 (Iowa 2014) (recognizing that a substantial change in circumstances to justify modification of child support can be determined under section 598.21C(1) or 598.21C(2)(a)); *In re Marriage of Heald*, No. 14-0777, 2015 WL 409129, at *3 n.4 (Iowa Ct. App. Jan. 28, 2015) (citing *In re Marriage of Mihm* and concluding that, even when there has been no change in circumstances as contemplated by the parties or the district court, section 598.21C(2)(a) establishes a per se substantial change upon which modification can be based when there is a ten percent or more discrepancy in child support). Here, the child support amount based on the current incomes of the parties yielded a child support obligation of $560,[2] which is more than ten percent of the zero amount provided for in the original stipulation and decree. Therefore, we affirm the modification of James's child support obligation to require him to pay $560 per month starting March 1, 2020, and the corresponding modification of the sharing of certain expenses, including uncovered medical expenses.

Second, even if we were to ignore the per se basis for modifying child support provided for in Iowa Code section 598.21C(2)(a), James misconstrues the effect of the parties' failure to provide information and factual findings supporting the claimed deviation in the original stipulation and decree. Even assuming there

---

[2] While James disagrees with the district court's determination that his gross annual income is $80,000, he raises no challenge to the monthly child support figure of $560 determined by the district court based on that income. As will be discussed later in this opinion, we agree with the determination of James's income. As James does not challenge the child support amount based on that income, we accept $560 per month as the correct monthly child support amount owed by James pursuant to the offset method provided for in Child Support Guidelines rule 9.14(3).

was an agreed deviation, as James claims, the parties did not meet the requirements necessary to sustain that deviation. *See* Iowa Code § 598.21B(2)(d) ("A variation from the guidelines shall not be considered by a court without a record or written finding, based on stated reasons, that the guidelines would be unjust or inappropriate as determined under the criteria prescribed by the supreme court.").

We conclude the dissolution decree, which adopts the terms of the stipulation, does not adequately explain why a deviation from the child support guidelines was appropriate. There is nothing in the record that indicates the district court was advised that the stipulation deviated from the child support guidelines. Neither party submitted affidavits of financial status or child support guidelines worksheets during the original dissolution proceeding. Without this record, it is inappropriate to use the stipulation as a basis for modification proceedings. *See Mihm*, 842 N.W.2d at 385 ("Absent compliance with the statute and our rules, there is no reason to assume that the initial child support amount set forth in the decree has any proper basis, or that it should be used as the basis for subsequent modification proceedings.").

Having determined the original stipulation cannot serve as a basis for modification, we must next determine whether the rest of the record supports a finding that a substantial change in circumstances has occurred since the entry of the dissolution decree. *See id.* at 386. To modify the existing child support obligation, the change in circumstances "must not have been within the district court's contemplation when the decree was entered." *Id.* at 381–82. Furthermore, "it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice." *Id.* at 382. The

district court "has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity." *In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006).

To determine whether a substantial change in circumstances has occurred, we consider several factors, including "changes in a party's employment or income, changes in a party's number of dependents, changes in a party's residence, a party's remarriage, and other factors relevant in the case." *Mihm*, 842 N.W.2d at 381; *accord* Iowa Code § 598.21C(1). Here, there have been multiple changes. One change has been a decrease in Mary's income since the original stipulation and decree were entered. Additional changes include the fact there has been a breakdown in the ability of the parties to implement the cost-sharing provisions related to school and extracurricular activities and changes made to the children's health insurance plan.[3] The disagreement over whether James was obligated to pay all the children's school and extracurricular activity expenses once they were moved to public school resulted in Mary paying a higher share of the children's expenses than originally contemplated. The higher deductible insurance plan leads to Mary paying much more out of pocket for the children's medical care. Based on these unexpected increases in Mary's financial obligations coupled with the unexpected decrease in her income, we conclude there has been a substantial change in circumstances.

---

[3] After the original decree was entered, James selected a different insurance plan for himself and the children that resulted in a higher deductible.

Having concluded there has been a substantial change in circumstances, we next consider what child support amount is appropriate under the circumstances. The district court determined Mary's income was $28,150, and James's income was $80,000. As previously noted, if these income figures are accurate, James lodges no challenge to his monthly child support obligation of $560. However, James disputes the district court's income determinations. He argues the district court both understated Mary's income and overstated his.

Turning first to James's income, we agree with the district court and conclude James's income is accurately estimated to be $80,000. While James claimed annual gross income of $49,955, other evidence in the record suggests his income is higher. For instance, evidence showed James's corporation paid James's LLC annual rent in the approximate amount of $80,000 each year. James testified that the "vast majority" of this rent went to the upkeep on the building and to pay the mortgage note on the property, both of which would have contributed to increased net worth for James as the sole owner of the LLC. Additionally, a financial affidavit signed by James approximately six months before trial disclosed personal monthly expenses of $6059, or $72,708 annually. Further, the evidence showed James purchased personal items through the corporation, giving him the benefit of those items without it showing up as income on his tax returns. Finally, James testified he occasionally did side jobs for cash and admitted he did not know how much he made, although he estimated he made $1000 in 2018 from these jobs. Taking this information together, we conclude $80,000 accurately estimates James's income.

As for Mary's income, the district court found Mary had an income of $28,150 based on Mary's testimony and her supporting documentation. The district court impliedly found Mary credible and we find no basis for not giving weight to that finding. Further, on our de novo review, we conclude $28,150 accurately estimates Mary's income.

## B.      Contract That Cannot Be Modified

Next, James argues the original stipulation was a contract between the parties and that contract relieved James of the obligation to pay child support to Mary in exchange for the property division and spousal support provisions. He asserts the bargained-for "no child support" provision cannot now be modified, as to do so would inequitably ignore the property division and spousal support provisions that were agreed to in return. While we agree with some of James's assertions, we disagree with his conclusion.

It is true that an agreement for child support set forth in a stipulation by the parties "becomes a final contract when it is accepted and approved by the court." *Mihm*, 842 N.W.2d at 384 (quoting *In re Marriage of Lawson*, 409 N.W.2d 181, 182 (Iowa 1987)). However, "[p]arents cannot lightly contract away or otherwise modify child support obligations." *Id.* (quoting *In re Marriage of Zeliadt*, 390 N.W.2d 117, 119 (Iowa 1986)). "[I]t is not for the parties to determine an appropriate level of child support. By statute, establishing an appropriate level of child support is ultimately the responsibility of the district court after being fully advised of the circumstances of the parties." *Id.* at 385.

Here, the parties deprived the district court judge who signed the original decree of the ability to fulfill the judge's obligation by failing to disclose an agreed-

upon deviation from the guidelines and providing reasons for the deviation. *See* Iowa Code § 598.21B(2)(d) (prohibiting the district court from considering a variation from the guidelines "without a record or written finding, based on stated reasons, that the guidelines would be unjust or inappropriate"). As stated in *Mihm*, to avoid the problem we have in this case, such writren findings and reasons are vital:

> The written findings and reasons are vital to a later determination by the court about whether there has been a substantial change in circumstances. That is the case whether the child support modification is sought under Iowa Code section 598.21C(1) or under section 598.21C(2)(a). If the parties want the district court to deviate from the child support guidelines, and also want to avoid subsequent modification of that award based on an evaluation of changed circumstances or the ten percent deviation, counsel and the district court need to insure that the dissolution decree explains the reasons for the deviation and that those reasons are factually and legally valid. *See* Iowa Ct. R. 9.11; *see also In re Marriage of Nelson,* 570 N.W.2d 103, 108 (Iowa 1997) (explaining a modification order that deviated from the child support guidelines without explanation could not be used as a basis to determine whether there had been a substantial change in circumstances). Absent compliance with the statute and our rules, there is no reason to assume that the initial child support amount set forth in the decree has any proper basis, or that it should be used as the basis for subsequent modification proceedings.

The parties having not complied with the rules for deviating from the guideline-amount of support, James cannot claim the parties had an enforceable contract with respect to child support that prevents modification.

## C.    Voluntary Underemployment

Finally, James argues that a substantial change in circumstances cannot be based on Mary's decreased income because such decrease was voluntary. It is true that a parent cannot rely on a claim of decreased income to obtain a modification of child support if the reduction of income is voluntary with an improper

intent to deprive children of support or in reckless disregard for the children's well-being. *See Swan*, 526 N.W2d at 323–24. However, we find no persuasive evidentiary support for James's claim that the decrease in Mary's income was voluntary or that it was the result of an improper intent to deprive the children of support. To the contrary, our de novo review causes us to conclude Mary lost her full-time position at the gym through no fault of her own. To her credit, within a reasonable time after losing her full-time job at the gym, she sought replacement employment. When she was unsuccessful, she worked several part-time jobs and tried to develop her own businesses to replace her lost income. Finding Mary's reduced income was not a voluntary circumstance, it does not preclude the reduced income from being taken into account as one of the changes in circumstances warranting modification.

### D.    Conclusion

For the foregoing reasons, we find Mary met her burden of establishing a substantial change in circumstances warranting modification of the child support provisions of the original decree. Therefore, we affirm the district court's modification order in all respects with regard to child support and children's expenses, including the expense-sharing provisions, the uncovered medical expense division provisions, and the imposition of a $560 monthly child support obligation owed by James. *See McDermott*, 827 N.W.2d at 686 (finding it proper to order each party to pay one-half of extracurricular activities when the parties are awarded shared physical care and child support is calculated using the offset method); *In re Marriage of Dillon*, No. 16-0415, 2016 WL 7393904, at *2 (Iowa Ct.

App. Dec. 21, 2016) (same with respect to the children's school and extracurricular activities).

## V. Contempt of Court

Next, James argues the district court erred by dismissing his contempt application against Mary. The only contempt claim briefed on appeal relates to Mary's decision to move the children to public school.

Contempt proceedings are "quasi-criminal in nature," and the "party alleging contempt has the burden to prove the contemner had a duty to obey a court order and willfully failed to perform that duty." *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). We further note, however, that the district court has broad discretion to refuse to find a party in contempt even when the elements of contempt have been shown. *See Swan*, 526 N.W.2d at 327. "[U]nless this discretion is grossly abused, the [trial court's] decision must stand." *Id.* (alteration in original).

On our review, we affirm the district court's decision not to find Mary in contempt of court. We agree it was inappropriate for Mary to act unilaterally to switch the children's school without agreement from James when James is a joint legal custodian of the children. *See* Iowa Code § 598.1(3) (defining "joint legal custody" to give both parents the right and responsibility to participate in decisions affecting the children's education with neither parent having rights superior to the other); *In re Marriage of Comstock*, No. 20-1205, 2021 WL 1016601, at *2 (Iowa Ct. App. Mar. 17, 2021) (confirming that, when parties with joint legal custody reach an impasse as to education issues involving the children, the court system is to be used to resolve the dispute rather than allowing the parent with physical care of the child to act unilaterally). However, the record does not suggest Mary switched

the children's school for any reason other than the children's own desire to do so. Additionally, the evidence established Mary attempted to communicate the children's desire to transfer to James, and, while he was unhappy with the decision, he never ultimately demanded mediation as provided for in the original stipulation and decree. Nothing in the record indicates Mary acted with the bad intent or disregard necessary to show willful disobedience. *See In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993) ("In order to show willful disobedience there must be evidence of conduct which is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not."). Further, we note James waited over three and one-half years after the children were enrolled in the public school to bring the contempt action challenging the switch and there was no evidence the children had been adversely affected in any way by it.

Under all of these circumstances, even if we assumed James had established a willful violation of the original stipulation and decree, we find no abuse of discretion in the district court's decision to dismiss James's application.

## VI.    Attorney Fees

We are asked to address both trial and appellate attorney fee claims.

### A.    Trial Attorney Fees

James argues the district court erred by awarding Mary $1000 in trial attorney fees. An award of attorney fees in a dissolution of marriage modification proceeding rests in the sound discretion of the district court and will not be disturbed on appeal in the absence of an abuse of discretion. *In re Marriage of*

*Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). The controlling factor is the parties' ability to pay the fees. *Id.* Given James's significantly greater earnings, coupled with Mary's limited means, the district court did not abuse its discretion in ordering James to pay $1000 of Mary's trial attorney fees.

## B.    Appellate Attorney Fees

Mary requests an award of appellate attorney fees. Appellate attorney fees in a dissolution of marriage modification proceeding "are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). The factors we consider include "the needs of the party seeking the award, the ability of the other party to pay, and relative merits of the appeal." *Id.*

Here, Mary has significant need for the award of appellate attorney fees and James has the ability to pay such fees. In addition, Mary has been forced to defend the district court's position on appeal and has been fully successful in doing so. Therefore, we determine James should be ordered to pay all reasonable and necessary fees incurred by Mary on appeal. As we do not have an attorney fee affidavit from which to determine that amount, we remand to the district court for the sole purpose of determining the amount of the reasonable and necessary fees incurred by Mary on appeal and entering judgment in her favor against James for that amount.

**VII.    Conclusion**

For the reasons stated, we affirm the district court's modification order and we remand for the sole purpose of determining James's obligation for Mary's appellate attorney fees as stated herein.

**AFFIRMED AND REMANDED.**